```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

DINESH MEHTA,                      :
     Plaintiff,                    :
                                   :
V.                                 :     CASE No. 3:10-CV-1617(RNC)
                                   :
ACE AMERICAN INSURANCE CO.,        :
     Defendant.                    :
```

RULING AND ORDER

Plaintiff Dinesh Mehta seeks to recover underinsured motorist benefits in his individual capacity and as administrator of the estate of his late wife, Yamuna Mehta. He seeks payment of benefits under a policy issued by defendant Ace American Insurance Company ("Ace") in connection with his rental of a car in New York. His claims for coverage arise out of the death of his wife, who was struck and killed by an underinsured motorist in Connecticut. He asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Connecticut Unfair Trade Practices Act (CUPTA) and Connecticut Unfair Insurance Practices Act (CUIPA). Ace has moved for summary judgment on all the claims in the complaint. For reasons that follow, the motion is granted.

I.   Background

On January 1, 2008, plaintiff rented a car from National Car Rental in New York City. In connection with the rental, he purchased supplemental liability insurance ("the policy"), which

included uninsured and underinsured motorists coverage.  The policy was underwritten by defendant Ace and issued to Vanguard Car Rental USA Inc.; plaintiff purchased the right to be insured under the policy for $12.95 per day.  Plaintiff's spouse, Yamuna Mehta, was not identified in the rental agreement as an authorized driver or insured person, although plaintiff argues that she qualified as a "named insured" under New York law.  The policy contained several endorsements including the New York Excess Supplementary Uninsured/Underinsured Motorists Endorsement ("the SUM Endorsement").

    Plaintiff drove the rental car to Connecticut.  On January 6, 2008, an underinsured motorist struck and killed Mrs. Mehta while she was crossing a street after exiting the rental car.  Mr. Mehta was walking next to her and witnessed her death.  He has testified that she was more than ten feet from the rental car at the time of the accident.  The underinsured motorist, Abner Pena, was driving a vehicle owned by Sandra Pena that was covered under a liability insurance policy issued by Allstate Insurance Company.  The Allstate policy provided liability indemnification coverage in the amount of $25,000 per person and $50,000 per occurrence.  The Penas had no other insurance coverage.  Allstate has paid the limits of its $25,000 policy to the estate of Yamuna Mehta; the policy did not provide coverage for plaintiff's

derivative claims.

Plaintiff submitted a claim under the underinsured motorists coverage of the Ace policy, which had limits of $100,000 per person and $300,000 per occurrence.  Rental Insurance Services, Inc. ("RIS"), a third-party administrator, was responsible for processing the claim on ACE's behalf.  Ace denied the claim and this suit followed.

II.   The Policy

The Ace policy provides a schedule of insurance as follows:

A. Automobile liability with limits equal to New York state minimum financial responsibility requirements of: $25,000 each person - bodily injury; $50,000 each person - death; $50,000 each accident - bodily injury; $100,000 each accident - death; $10,000 each accident - property damage.  As provided under the terms of the rental agreement.

B. Uninsured Motorists with limits equal to New York state minimum financial responsibility requirements of: $25,000 each person - bodily injury; $50,000 each person - death; $50,000 each accident - bodily injury; $100,000 each accident - death.

In addition, the policy provides "(ii) Supplementary Uninsured/Underinsured Motorist insurance equal to the difference between underlying insurance and $100,000 per person/$300,000 per accident."

3

The SUM Endorsement provides: "We will pay all sums the 'named insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by a 'loss' involving a 'rental vehicle' during the term of the 'rental agreement.'" The uninsured motorist's liability for these damages must result from the "ownership, maintenance or use of the 'uninsured motor vehicle.'" "Named insured" is defined to include: "(1) the 'named insured' or (2) any person permitted by the 'authorized used/driver' to occupy the 'rental vehicle.'" "Occupying" is defined as "in, upon, entering into, or exiting from a motor vehicle." In addition, "bodily injury" as defined to mean "bodily harm, including sickness, disease or death resulting therefrom."

Finally, the policy also states that coverage shall conform to the requirements of the applicable New York insurance laws and regulations.

III. Legal Standard

Summary judgment may be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson

4

v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986).  In determining whether summary judgment is proper, the record must be viewed in the light most favorable to the nonmovant.  See Sheppard v. Beerman_, 317 F.3d 351, 354 (2d Cir. 2003).

Under New York law, which the parties agree applies to the interpretation of the policy, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract."  Morgan Stanley Group Inc. v. New England Ins. Co._, 225 F.3d 270, 275 (2d Cir. 2000).  If the language of the policy is doubtful or uncertain, any ambiguity must be construed in favor of the insured and against the insurer.  See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co._, 472 F.3d 33, 42 (2d Cir. 2006).

IV.  Discussion

Defendant argues that it is entitled to summary judgment because neither plaintiff nor his decedent is entitled to recover under the Ace policy as a matter of law.  Specifically, defendant argues: (1) plaintiff's decedent was not a named insured under the policy, was not occupying the rental vehicle at the time of the incident, and the incident was not caused by a loss involving the rental vehicle; (2) plaintiff's claims are derivative and also are not caused by a loss involving the rental vehicle; and (3) plaintiff's claims alleging bad faith and violations of CUTPA

and CUIPA must fail because coverage under the policy was properly denied. Plaintiff responds that New York law provides portable supplemental underinsured motorists coverage to the resident spouse of a named insured and that any provisions restricting such coverage in the policy are void.

I agree with the defendant that Mrs. Mehta was not protected by the policy at the time of the accident. Mrs. Mehta was not a "named insured" as defined by the SUM Endorsement to include "the named insured" and "'any person permitted by the 'authorized user/driver' to occupy the 'rental vehicle.'" The SUM Endorsement defines "occupying" to include "in, upon, entering into, or exiting from a motor vehicle."

Plaintiff argues that under the plain language of the policy, a person permitted to occupy the rental vehicle is covered even if that person is not occupying the vehicle when injured. Reading the SUM Endorsement as a whole, however, coverage is limited to those named as insureds under the policy – here, the renter Dinesh Mehta – and others permitted to occupy the vehicle if injured while "in, upon, entering into, or exiting from" the vehicle. Mrs. Mehta was not "occupying" the rental vehicle within the meaning of the policy when she was struck crossing the street more than ten feet from the rental car. See, e.g., Travelers Ins. Co. v. Wright, 202 A.D.2d 680, 680-81 (1994)

(appellant, who was walking away from the car at the time of the incident, was not "occupying" the insured vehicle - defined in the policy as "in or upon or entering into or alighting from" - notwithstanding her intent to return and reenter the vehicle). Accordingly, she does not qualify as an insured person under the plain language of the SUM Endorsement.

Plaintiff urges that Mrs. Mehta is nonetheless entitled to coverage under New York's statutory scheme, which he claims provides portable SUM coverage for a resident spouse of a named insured. New York Vehicle and Traffic Law § 370 requires rental vehicle insurance policies to provide "uninsured motorists coverage in the minimal amount and in the form provided for in subsection (f) of section three thousand four hundred twenty of the insurance law." N.Y. Veh. & Traf. Law § 370. New York Insurance Law § 3420(f)(1) mandates that every motor vehicle liability insurance policy contain uninsured motorist coverage of $25,000/$50,000 for bodily injury caused by an accident with an uninsured motorist in New York. See Morris v. Progressive Cas. Ins. Co., Inc., 662 F. Supp. 1489, 1495 (S.D.N.Y. 1987). Section 3420(f)(2) requires the issuance of coverage in amounts greater than $25,000/$50,000, at the option of the insured. See id. at 1494. Plaintiff argues that New York Vehicle and Traffic Law § 370 requires that a rental vehicle insurer offer supplemental §

7

3420(f)(2) coverage.  Cf. ELRAC, Inc. v. Edwards, 270 A.D.2d 414, 414-15 (2000) (self-insured automobile rental company obligated by law to provide uninsured motorist benefits to renter); Morris, 662 F. Supp. at 1494. (describing § (f)(2) as "a special kind of uninsured motorists coverage — one that protects against underinsurance if the SUMI holder is involved in an accident with an insured vehicle, in the § (f)(1) sense of 'insured,' with lower coverage maxima than the SUMI holder"); Allstate Ins. Co. v. Shaw, 52 N.Y.2d 818, 826 (1980) (self-insured car rental company required to provide uninsured motorist coverage).

Ordinarily, if an insured elects § 3420(f)(2) coverage, the terms of the policy must conform to the requirements of New York Insurance Department Regulation 35-D.  See N.Y. Comp. Codes R. & Regs. tit. 11, § 60-2.3(a)(2).  Regulation 35-D provides that the definition of an "insured" includes the named insured as well as a resident spouse.  Therefore, if Regulation 35-D applies, Mrs. Mehta would qualify as an insured person under the SUM Endorsement.  Moreover, SUM coverage of this nature - for a named insured and resident spouse - is usually portable and does not require that the injury occur while the insured is occupying the insured vehicle.  E.g., Widiss & Thomas, Uninsured and Underinsured Motorist Insurance, (3d Ed., 2005) § 4.2, p. 68-72 (explaining that "clause (a)" insureds, including a named insured

8

and resident spouse, are protected whether or not they are operating or are passengers in a motor vehicle, as well as when they are engaged in any other activity such as walking); Opinion of the New York State Insurance Department Re. Personal Lines Automobile Insurance UM/SUM Coverage, Ex. A, Pl.'s Supp. Auth. (ECF No. 105).  On this basis, plaintiff argues that Mrs. Mehta was protected by SUM coverage when she was struck in the crosswalk and any restrictions to the contrary in the SUM Endorsement are void.

After considering the parties' submissions, I agree with defendant that it was not required by New York Vehicle and Traffic Law § 370 to provide supplemental coverage under § 3240(f)(2).  None of the cases cited by plaintiff explicitly require rental car companies to provide this coverage.  In the absence of such cases, I conclude that "Vehicle and Traffic Law § 370 requires rental car companies to provide primary insurance to their renters up to the minimum liability limits provided by the statute," ELRAC, Inc. v. Ward, 96 N.Y.2d 58, 78 (2001), as well as minimum uninsured motorist coverage in the form provided in § 3240(f), which the policy did, as demonstrated by the "Schedule of Underlying Insurance."  Because the SUM Endorsement exceeded the minimum statutory requirements for rental vehicles, Ace could limit the scope of the coverage provided by the Endorsement to

persons occupying the rental vehicle and to bodily injury resulting from a loss involving the vehicle. See Pfoh v. Elec. Ins. Co., 14 A.D.3d 777, 788 (N.Y. App. Div. 2005)(resident-relative exclusion in excess liability policy, which provided coverage beyond that required by statute, permissible because "insurers are prohibited from limiting their contractual liability only as to statutorily mandated coverage"). Mrs. Mehta was not occupying the rental vehicle at the time of the incident. Therefore, her estate is not entitled to recover.

Plaintiff's loss of consortium and bystander emotional distress claims also are unavailing. The Ace Policy defines "bodily injury" to include "bodily injury, sickness, or disease including death from any of these." Courts interpreting nearly identical policy language have determined that claims for bystander emotional distress are not covered. See, e.g., Taylor v. Mucci, 288 Conn. 379, 385 (2008) (bystander emotional distress not a separate and distinct bodily injury under the policy - defined as "any bodily injury, sickness, disease or death sustained by any person" - notwithstanding accompanying physical manifestations of the distress).

Finally, defendant argues that plaintiff has not established bad faith in connection with the denial of coverage under Connecticut law. Plaintiff counters that "[i]f the opinion of

10

New York counsel advised the defendant of the application of Regulation 35-D and the defendant persisted in denying this claim, a jury could well determine that the defendant is liable for bad faith."  Pl.'s Opp'n (ECF No. 77) at *33.  Plaintiff relies on an email exchange involving defendant's counsel indicating an initial impression from counsel for the Defendant that "we may owe it" and noting that New York rather than Connecticut law applied.  See id. at 33-34; Pl.'s Ex. G (ECF No. 77-7).

To prove a claim for bad faith under Connecticut law, plaintiff must prove that the defendant engaged in conduct designed to mislead or deceive; "bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Chapman v. Norfolk & Dedham Mut. Fire Ins. Co., 39 Conn. App. 306, 320 (1995) (citations omitted).  "A mere coverage dispute or negligence by an insurer in conducting an investigation is not sufficient to state a claim of bad faith against an insurer." Emmelmann v. Am. & Foreign Ins. Co., CIV.A303CV02144 AWT, 2006 WL 861015, at *2 (D. Conn. Mar. 31, 2006) (internal quotation marks omitted).  Plaintiff's allegations, as described above, are insufficient to meet either standard.

Plaintiff's allegations of violations of CUTPA and CUIPA are similarly insufficient.  To prevail on the CUTPA claim, plaintiff must prove that Ace engaged in unfair or deceptive acts that caused plaintiff to suffer an ascertainable loss.  Conn. Gen. Stat. §§ 42-110b(a) & 42-110g(a).  Viewing the record in a light most favorable to the plaintiff, a jury could not reasonably find that the defendant committed such a practice.  <u>Walsh v. Seaboard Sur. Co.</u>, 94 F. Supp. 2d 205, 212-13 (D. Conn. 2000).  Nor has plaintiff shown that Ace engaged in specific unfair acts with such frequency as to indicate a general business practice as required for a CUIPA claim.  <u>E.g.</u>, <u>Lees v. Middlesex Ins. Co.</u>, 229 Conn. 842, 847 (1994).  Defendant is therefore entitled to summary judgment on plaintiff's bad faith, CUTPA and CUIPA claims.

<u>IV. Conclusion</u>

Accordingly, the motion for summary judgment is hereby granted.  The Clerk may close the file.

So ordered this 30th day of March 2015.

                                                 /s/RNC  
                                          Robert N. Chatigny  
                                   United Stated District Judge